INHABITANTS OF WORCESTER *vs.* LEWIS CHAPIN & others.

A testator bequeathed property to C. in trust for the necessary support of W., with directions that, if W.'s health should not admit of his supporting himself comfortably by his labor, such support should be furnished by C. from the income and profits of the bequeathed property, and if, in the opinion of C., the proceeds of W.'s labor, and such income and profits, should be insufficient for his comfortable support, then C. should advance, from the property itself, what in his judgment should be necessary for such support: Before November 1839, C. expended the income and profits of said property in the support of W., and procured for him a suitable boarding place: In November 1839, W. was committed to the house of correction in Worcester, where he remained until May 1840, and the town of Worcester, in which he had a lawful settlement, paid, as required by law, the expense of keeping him in said house, and demanded reimbursement from C., which he refused to make : The town thereupon brought a bill in equity against C. to compel him to reimburse said expense. *Held,* that it was not the duty of C. to provide for the support of W. when confined in a jail or house of correction for his misconduct, as it could not materially affect his comfort whether he were supported there from the trust fund or at the public expense.

THE plaintiffs alleged, in a bill in equity, that William Caldwell, whose legal settlement was in the town of Worcester, was committed to the house of correction in November 1839, and remained therein till May 1840; that he was poor and unable to pay the expense of keeping him there, and had no relations liable to maintain him; that the plaintiffs had paid said expense, as by law they were bound to do ; and that he still remained unable to pay. The bill then alleged, that Rebecca White made her last will on the 13th of May 1835, which was proved and allowed on the 5th of April 1836, which, after bequeathing to said William divers articles of furniture, &c. contained the following bequest : " I give and bequeath to Lewis Chapin of Worcester, in trust for the necessary support of my son, William Caldwell, the interest and use, to be so applied when necessary, all the rest of my estate, of whatever name or nature. My will is, that whenever the

health of the said William will not admit of his support-ing himself comfortably by his labor, such support shall be furnished, by said trustee, from the income and profits of said estate; and should it be necessary, in the opinion of said trustee, that such income and profits are insufficient, with the proceeds of his own labor, for his comfortable support, he is to advance what in his judgment may be necessary for this purpose, from the property itself, and also for his funeral ex penses. No part of said furniture and other property is to be subject to the debts or disposal of my said son William."

The bill also alleged, that before said Caldwell was com-mitted, as aforesaid, to the house of correction, the said Cha-pin, as trustee as aforesaid, had received, under said will, a large amount of money, the interest of which was sufficient to support said Caldwell, and pay the expense aforesaid, and that said Chapin ought to have paid it; and that if the said inter-est, with the labor of said Caldwell, was not sufficient for his support, said Chapin was bound in equity to pay said expense to the keeper of the house of correction, or to the plaintiffs, out of said money and property; yet that he, though re-quested by said keeper and by the plaintiffs, has refused so to do; pretending that he is under no obligation to pay for the support of said Caldwell, any further than such support shall be furnished under his own direction; and also pretending that other persons, having an interest in said property, had objected to his paying the same to the plaintiffs.

The bill then alleged that certain persons (named) claimed an interest in said property, under the following provisions in the will aforesaid : " What remains of said furniture and other property, and any income thereof not necessarily expended for the support of the said William Caldwell, I give, bequeath and devise, at his decease, as follows, viz. the one equal half there-of in value to my two nieces " (naming them) " in equal shares, to them and their heirs," &c. : And that said residuary lega-tees claimed the right to control said trustee in the expendi-ture of said money ; which right the plaintiffs deny.

The prayer of the bill was that said Chapin and said re-siduary legatees might be held to answer.

The answer of the defendant Chapin admitted the allega-
tion in the bill, as to the settlement of said Caldwell, his
commitment to the house of correction, the payment by the
plaintiffs of the expense of his support there, their demand on
him to repay it, and his refusal ; and also the making and pro-
bate of the last will of said Rebecca White, and the contents
thereof. He also averred that, on the 17th of October 1836,
he had in his hands, by virtue of said will, $1176·79, of which
sum he then deposited about $1000 in the Worcester County
Institution for Savings, on interest : That he, between that
time and December 7th 1839, expended, for necessary ex-
penses in supporting said Caldwell, (including expenses and
services of said defendant,) the sum of $310·41, which was
more than the interest and income of said fund : That there
remained in his hands, at the time of making his answer,
(September 1842) about $1050 : That said defendant, before
said commitment of Caldwell, had provided a suitable place
for him to board ; that he had already necessarily expended
more than the income of said fund, to support said Caldwell,
and that it would hereafter be necessary, by reason of said
Caldwell's increasing age and inability to support himself, to
expend a larger portion of said fund than heretofore.

*Newton*, for the plaintiffs.

*Washburn*, for the defendants.

WILDE, J. The general question in this case is, whether
Lewis Chapin, one of the defendants, who holds property in
trust for the support and maintenance of William Caldwell,
is responsible to the plaintiffs for expenses incurred for his
support while he was confined in the house of correction, and
which the plaintiffs have been obliged to pay. By the last
will of the said Caldwell's mother, certain property was be-
queathed to the said Chapin in trust, the interest and use of
which were to be applied by him to the necessary support of
the said William, whenever his health should be such as would
not admit of his supporting himself comfortably by his labor.
" And should it be necessary, in the opinion of the said trus-
tee, that such income and profits are insufficient, with the pro-

ceeds of his own labor, for his comfortable support, he is to advance what in his judgment may be necessary for this purpose, from the property itself, and also for his funeral expenses." It appears by the said Chapin's answer, that before the said William's commitment, he had provided a suitable situation for him to board, and that he had been obliged to pay for his necessary support more than the income of the trust fund; so that the question is, whether the trustee is to be compelled to pay the plaintiffs' demand from the principal fund, he, exercising his own judgment and discretion, having refused so to do.   On the part of the defendants, it is contended that the trust created by the will, so far as it relates to the capital of the trust fund, was discretionary, and not subject to the control of a court of equity.   But this ground of defence certainly cannot be sustained.   Courts of equity, in matters of trust, have an exceedingly broad and comprehensive jurisdiction, and whenever a trustee is guilty of a breach of trust, or neglects or refuses to execute it, a court of equity is bound to grant relief.   And this power and jurisdiction of a court of equity extend to cases where a trustee is intrusted with a discretionary power over the trust fund; and if he should exercise such power fraudulently, and for selfish and sinister purposes, as in the case of *Richardson* v. *Chapman*, 7 Bro. P. C. (2d ed.) 318, or if he should unreasonably neglect or refuse to execute a discretionary trust clearly indicated, a court of equity would undoubtedly interpose and compel the performance.   But this we think is not such a case.   The object of the testatrix, as expressed in her will, in creating the trust, was to provide for the comfortable support and maintenance of her son; not to relieve the *town of Worcester from the expenses* incurred therefor.   This might be the consequence, but not the object of the provision.   It was undoubtedly her intention to prevent the liability of her son to be sent to the alms house, and there to be confined and supported at the expense of the town; and it is the duty of the trustee, as we think, to prevent this; for such a confinement might materially impair the comfort of the *cestui que trust.*   But we do not think it the

duty of the trustee to provide for his support and maintenance, when confined in jail or in the house of correction for his misconduct; for it cannot materially affect his comfort, whether he is there supported from the trust fund, or at the expense of the town of Worcester, or that of the Commonwealth.

We do not, therefore, consider this to be a case in which we ought to interpose, to direct or control the discretion of the trustee. Whether he would be justified in paying the plaintiffs' claim, is a question not necessary to be decided; but we think it very clear that he is not bound to pay it. This bill, therefore, must be dismissed, with costs for the defendants.